Joseph A. Brust, J.
This is an application pursuant to CPLR article 78 in which petitioners seek an order directing that any mechanically operated model of a portion of the face of a voting machine which is used or exhibited in any polling place in the City of New York during, but not limited to, the general election to be held on November 3,1964, be nondiscriminatory against the Liberal party and any other duly constituted political party of the State of New York, and to restrain respondents, Board of Elections, from permitting the use of any such model which shall so discriminate.
Petitioners are duly elected officers of the Liberal party and qualified voters in the counties in which each resides and the Liberal party is a legally constituted political party, having qualified as such by polling in excess of 50,000 votes at the last preceding election for Governor of New York State.
The Shoup Voting Machine Corporation, manufacturers of the present and new voting machines which will be used throughout the city in the coming general election of November 3, 1964, have, at the request of respondents, manufactured a mechanically operated model of a portion of the face of the voting machine, intended for display and use in each polling place within the City óf New York, and for the purpose of providing instructions to the voters in the use of the voting machine. These models, in fact, display only that portion of the face of the voting machine which show the party names, emblems *129 and candidates’ names of the Republican party and the Democratic party. The names, emblems and candidates’ names of the Liberal party and Conservative party, the two other duly constituted political parties, do not appear on this model.
Petitioners contend that omission of reference to their party, and any other legally constituted party of this State, is arbitrary, capricious, discriminatory and in violation of sections 257, 161 and subdivision 2 of section 193 of the Election Law, in that it denies to a substantial segment of the citizens equal protection of the law and constitutes electioneering at the polls.
Respondents oppose this application and cite section 257 of the Election Law in support of their position. Respondents further aver that the model machines have been completed; are presently ready for use on Election Day, November 3, 1964; that the cost of remodelling these model machines to comply with petitioners ’ demand is prohibitive; that no budgetary provision has been made for such additional expenditures; and, finally, that it is physically impossible to remodel or manufacture new model machines prior to November 3, 1964.
Section 257 of the Election Law provides as follows: “ Instructions of voters on election day; assistance to voters. For the instruction of voters, there shall be so far as practicable, in each polling place, a mechanically operated model of a portion of the face of the machine. Such model, if furnished, shall be located during the election on the inspectors’ table or in some other place which the voter must pass to reach the machine, and each voter, before entering the machine, shall be instructed regarding its operation and such instruction illustrated on the model and the voter given opportunity to personally operate the model ’ ’.
Respondents contend that this section, by its provision requiring the display of a model voting machine only ‘ ‘ so far as practicable ”, obviously implies permissive rather than mandatory use of such machines at the polling places, and that “ if furnished ” only “ a portion of the face of the machine ” need be displayed, vests in them broad discretion to act in accordance with what they deem to be “ practicable ” compliance with the section. Hence, respondents, in providing the names of the two alleged major political parties, i.e., Republican and Democratic parties, and omitting the others, conclude that this exercise of discretion is proper and reasonable and should not be disturbed upon review herein.
Certainly, it is within the board’s discretion to determine when the mandated use of a model machine is “ practicable ”. The board has determined that the use of a model such as the *130 Shoup model is practicable and this determination is not questioned herein. While the court may agree that the board is invested with some discretionary power to determine what ‘ ‘ portion of the face of the [voting] machine ’ ’ shall appear on such model, it does not agree that the board is thereby empowered to exclude from such model the names and political emblems of any of those legally constituted parties of this State whose candidates will appear on the new voting machine for the coming and subsequent general elections. Such action constitutes an unreasonable and discriminatory exercise of discretion.
The court must take judicial notice that the type of voting machine presently in use in New York City is a recent innovation. This voting machine differs in many respects from the one heretofore used, the most important of which is that voting for candidates is by vertical columns rather than horizontal lines. Since this type voting machine has been employed in our city only in the past two elections, there is obviously a substantial number of potential voters who are totally unfamiliar with the mechanics of this voting machine. This would include not only eligible voters who failed to vote in the past two elections, and new voters presently eligible, but also a considerable number of our disadvantaged citizens who are exercising their voting franchise for the first time. The court does not deem it reasonable to sanction a sample or model voting machine, for the instruction of these classes of voters, which fails to display all of the legally constituted parties which will appear on the actual voting machine.
Moreover, whether or not intended, the exclusion from the model machine of petitioners’ party, emblem and candidates’ names, as well as that of other legally constituted parties, raises a serious question of discrimination and deprivation of fair representation, for, in effect, the present model, placed in each polling place, gives undue exposure and emphasis to the two major parties, to the exclusion and detriment of the others, thus denying to petitioners and others similarly situated the equal rights, privileges and protection of the law.
It is not seriously disputed by respondents that the display of only one political party and its emblem and candidates on the model machine, if one is used, would be arbitrary, unreasonable and a clear discrimination against other legally constituted parties. Why, then, should the display of only two of at least four of the political parties not constitute discrimination or be deemed a reasonable exercise of discretion on the part of respondents.
*131 In all of the circumstances, therefore, I find that petitioners have established a clear right to the relief sought. However, in view of the prohibitive cost involved ($200,000) in remodel-ling or providing new model machines for this year’s election, as attested to by respondents and not controverted by petitioners, and, further, the physical impossibility of manufacturing or remodelling the machines in time for said election, as attested to by the Shoup Voting Machine Corp., the court in weighing the equities will not direct that petitioners’ relief take effect for the election to be held November 3,1964.
It should be noted at this time that in previous years petitioners’ party and emblem had not been displayed on model voting machines, without formal objection by petitioners, and petitioners are therefore charged with laches in not seeking this relief sooner. This alone would justify this court, in equity, to deny the relief sought for this year’s election.
It is, however, suggested that respondents explore all reasonably possible methods of otherwise adding petitioners’ party and others similarly situated to the machine for the coming election.
Accordingly, the petition is granted only to the extent indicated above.